## SHERER–GILLETT CO. v. PILSBURY et al.

### In re BENTZ.

(Circuit Court of Appeals, Fifth Circuit. January 13, 1921.)

No. 3596.

Sales ☞456—Instrument in form of lease, with option to purchase, held not "conditional sale."

An instrument in the form of a lease of a display counter for 20 months. for $5 paid at the time and $6 a month thereafter, under which the lessee was to keep the property insured and pay taxes thereon, and surrender the property on the expiration of the term, and on such surrender had an option to purchase it for $10, was a lease, and not a "conditional sale," under the law of Louisiana, especially Rev. Civ. Code, arts. 2670, 2676, which permit the leasing of movable property.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Conditional Sale.]

Petition to Superintend and Revise from the District Court of the United States for the Eastern District of Louisiana; Rufus E. Foster, Judge.

Proceeding by the Sherer–Gillett Company against A. L. Pilsbury, trustee in bankruptcy of Henry C. Bentz, and others. A petition for an order requiring a surrender by the trustee of certain property was denied (267 Fed. 606), and the claimant brings a petition to superintend and revise the order. Petition granted, and decree reversed.

Walter J. Suthon, Jr., of New Orleans, La. (Hall, Monroe & Lemann, of New Orleans, La., and James G. Elsdon, of Chicago, Ill., on the brief), for petitioner.

St. Clair Adams, of New Orleans, La., for respondents.

Before WALKER, BRYAN, and KING, Circuit Judges.

WALKER, Circuit Judge. Under a written instrument executed in April, 1919, Henry C. Bentz acquired from the petitioner, Sherer-Gillett Company, a display counter, which was in the possession of Bentz when he was adjudged bankrupt on July 2, 1919. The counter

was not listed by the bankrupt on his schedules as an asset of his estate, and the petitioner was not listed as a creditor. The trustee in bankrupty took possession of the counter, and undertook to sell it as a part of the assets of the bankrupt estate, without giving any notice to the petitioner of the pendency of the bankruptcy proceeding or of the application for an order to sell the counter. Thereafter the petitioner demanded of the purchaser at such sale the delivery of the counter to it. That demand not being complied with, the petitioner, by a petition filed in the bankruptcy proceedings against the trustee and the purchaser at such sale, sought an order requiring the delivery of the counter to it. Thereupon the person claiming as purchaser filed in the bankruptcy proceeding a petition asking for the return of the sum he had paid for the counter, in the event of the court holding that it was not an asset of the bankrupt estate; the trustee then having in hand ample funds to enable him to comply with such an order. The court decided against the claim of the petitioner that it was entitled to the counter.

The instrument under which the bankrupt acquired the counter was in the form of an order given at New Orleans, La., addressed by him to the petitioner and accepted by the latter. By the terms of that instrument the petitioner leased the counter to the bankrupt for the term of 20 months; the bankrupt promising to pay therefor, as rent, the sum of $125 in installments, $5 being payable when the contract was entered into, and $6 on the 10th day of each of the succeeding 20 months. The bankrupt made no payment, except the initial one of $5. He agreed upon the expiration of said term to surrender the counter to the petitioner in good condition, ordinary wear and tear excepted. The instrument contained the following provision:

"It is an express condition of this lease, provided said leased property has been duly surrendered to you, that I (or we) shall have the privilege, for thirty days after the expiration of the same, of purchasing said counter for the price of $10 to be paid at the time such privilege is exercised, provided, further, I shall have fully and duly performed my (or our) part of the lease."

It also contained provisions to the following effect: The whole hire for the whole of said term was to become due and payable upon the breach of any covenant by the bankrupt, and in that event petitioner was to have the right to retake possession of the counter, without notice or previous demand. The filing of any petition in bankruptcy by or against the bankrupt shall be considered a breach of the contract. The bankrupt agreed to keep the property fully insured for the benefit of the petitioner and without expense to the latter, and to pay all taxes on the property while in the former's possession.

In behalf of the respondents it is contended that the contract was a conditional sale, disguised as a lease, and that the title to the property passed to the bankrupt, notwithstanding the stipulation undertaking to reserve title to the petitioner. Under the law of Louisiana such would be the result, if the contract was a conditional sale, and not a lease. Barber Asphalt Paving Co. v. St. Louis Cypress Co., 121 La. 152, 46 South. 193. Under the contract the bankrupt had an option to purchase. So long as that option was unexercised, he was not obligated, unconditionally or conditionally, to pay the price re-

quired to be paid to make him the owner. In the absence of an exercise of the option and the payment of the stated price, the extent of the right acquired by the bankrupt by his complying with the obligations imposed upon him by the contract was to possess and use the counter for the stated period of 20 months. The law of Louisiana permits the leasing of movable property. Revised Civil Code of Louisiana, arts. 2670, 2676. Controlling decisions support the contention that the presence in the contract here in question of the unexercised option to purchase did not keep it from being a valid one of lease, and not one of sale. Doullut v. Rush, 142 La. 443, 77 South. 110; Stevens v. Older & Chandler, 26 La. Ann. 634; Barber Asphalt Paving Co. v. St. Louis Cypress Co., 121 La. 152, 46 South. 193. In the opinion in the last-cited case it was recognized that the distinction between a contract of sale and such a contract as the one in question is that the former creates an obligation to pay the agreed price, while the latter imposes no such obligation prior to the exercise of the option to buy.

In the light of the state of facts disclosed in the first-cited case, the decision therein supports the proposition that such a contract as the one in question is not kept from being one of lease by the circumstance that the price to be paid in the event of the exercise of the option to buy was only $10 in addition to the amount the bankrupt obligated himself to pay as rent. It was disclosed in that case that the amount payable as rent was considerably more than it might have been expected to be if the option to buy had not been given. Without paying the sum stated in the option provision, which was payable only in the event of the exercise of the option, a compliance by the bankrupt with all obligations imposed upon him by the contract would have left him without right to the counter upon the expiration of the term for which he was to have the possession and use of it. As a result of his defaults his right ceased to exist prior to his bankruptcy. The petitioner never acquired the right to be paid the only price at which it agreed to sell. There is no law to prevent a lessee paying taxes on, and the cost of insuring, leased property as the whole or a part of the consideration for the use and enjoyment of it. We are of opinion that the bankrupt's relation to the counter was that of a lessee, who by his defaults had lost any right to retain possession, and was not that of a purchaser; he not having either paid or obligated himself, unconditionally or conditionally, to pay the price stated in the unexercised option to buy. It follows that the trustee was without right to sell the counter as an asset of the bankrupt estate. The court erred in ruling otherwise.

The petition is granted, and the decree under review is reversed.